TORGER OAAS
ATTORNEY AT LAW
Post Office Box 76
Lewistown, Montana 59457
(406) 366-1510
oaaslaw@midrivers.com
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| JUSTIN KING,<br><br>Plaintiff,<br><br>vs.<br><br>HEALTH CARE SERVICES CORP.,<br><br>Defendant. | CV- 24-32-GF-BMM-JTJ<br><br>**COMPLAINT**<br>**AND**<br>**JURY DEMAND** |

### Federal Jurisdiction

1. Federal Jurisdiction is based on diversity of citizenship and amount in controversy.

2. Plaintiff is a citizen of the State of Montana.

3. Defendant is incorporated in the State of Illinois and has its principal place of business in Illinois. Defendant is the licensee of Blue Cross Blue Shield and issues and administers health care plans in five (5) states through five (5) divisions: Blue Cross and Blue Shield of Illinois, Blue Cross

and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, Blue Cross and Blue Shield of Texas, and Blue Cross and Blue Shield of Montana.

4. The amount in controversy exceeds $75,000.00 as set out below.

## Venue

5. Plaintiff resides in Fergus County which is located in the Great Falls division of the U.S. District Courts of Montana and therefore venue is proper in this Court.

## General Allegations

6. In 2022, Plaintiff was insured under an individual health insurance policy issued by Defendant through its Montana division of Blue Cross Blue Shield. Plaintiff's Subscriber ID number is 928112559.

7. In 2022, Plaintiff sought pre-approval from Defendant for a back surgery. The back surgery he sought was a 2-level lumbar disc arthroplasty using artificial discs, model name Prodisk L. Plaintiff planned on having this surgery at the Texas Back Institute located in Plano, Texas.

8. Defendant denied pre-approval for this surgery on the basis that it was not appropriate, not medically necessary, and experimental in Plaintiff's case. This occurred on 12/15/2022.

9. The policy exclusion used to deny coverage for this claim states as follows:

> "16. Any services, supplies, drugs and devices which are:
>
> a. Experimental/Investigational/Unproven services, except for any services, supplies, drugs and devices which are Routine Patient Costs incurred in connection with an Approved Clinical Trial.
> b. Not accepted standard medical practice. The Plan may consult with Physicians or national medical specialty organizations for advice in determining whether the service or supply is accepted medical practice.
> c. Not a Covered Medical Expense.
> d. Not Medically Necessary.
> e. Not covered under applicable Medical Policy."

10. Medically necessary treatment is defined in the policy as follows:

> "MEDICALLY NECESSARY (OR MEDICAL NECESSITY)
> Health care services that a Physician, exercising prudent clinical judgment, would provide to a patient for the purpose of preventing, evaluating, diagnosing or treating an illness, injury, disease or its symptoms, and that are:
>
> 1. In accordance with generally accepted standards of medical practice;
> 2. Clinically appropriate, in terms of type, frequency, extent, site and duration, and considered effective for the patient's illness, injury or disease; and
> 3. Not primarily for the convenience of the patient, Physician, or other health care provider, and not more costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic results as to the

diagnosis or treatment of that patient's illness, injury or disease.

For these purposes, 'generally accepted standards of medical practice' means standards that are based on credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community, Physician Specialty Society recommendations and the view of Physicians practicing in relevant clinical areas and any other relevant factors.

The fact that services were recommended or performed by a Covered Provider does not automatically make the services Medically Necessary. The decision as to whether the services were Medically Necessary can be made only after the Member receives the services, supplies, or medications and a claim is submitted to The Plan. The Plan may consult with Physicians or national medical specialty organizations for advice in determining whether services were Medically Necessary."

11. The policy defines Experimental/Investigation/Unproven as follows:

"EXPERIMENTAL/INVESTIGATIONAL/UNPROVEN
A drug, device, biological product or medical treatment or procedure is Experimental/Investigational/Unproven if **The Plan determines** that:

1. The drug, device, biological product or medical treatment or procedure cannot be lawfully marketed without approval of the appropriate governmental or regulatory agency and approval for marketing has not been given at the time the drug, device, biological product or medical treatment or procedure is furnished; or
2. The drug, device, biological product or medical treatment or procedure is the subject of ongoing phase I, II or III clinical trials, or under study to determine its maximum tolerated dose, its toxicity, its safety, its efficacy or its efficacy as compared with a standard means of treatment or diagnosis; or

-4-

3. The prevailing opinion among peer reviewed medical and scientific literature regarding the drug, device, biological product or medical treatment or procedure is that further studies or clinical trials are necessary to determine its maximum tolerated dose, its toxicity, its safety, its efficacy or its efficacy as compared with a standard means of treatment or diagnosis.

Approved by a governmental or regulatory agency will be taken into consideration in assessing Experimental/Investigational/Unproven status of a drug, device, biological product, supply and equipment for medical treatment or procedure but will not be determinative."

12. On April 10, 2020, the Food and Drug Administration (FDA) approved the use of a medical device known as the prodisc L for 2-level lumbar disc arthroplasty.

13. Plaintiff underwent a 2-level lumbar disc arthroplasty on October 12, 2023 at the Stenum Orthopedic Clinic in Ganderkesee, Germany. The surgery was successful.

14. As of December 2022, 2-level lumbar disc arthroplasty using the prodisc L medical device was not experimental/investigational/unproven and was medically necessary given Plaintiff's condition. The FDAs approval included a Summary of Safety & Effectiveness Data (SSED) that concluded that 2-level lumbar disc arthroplasty was safe and effective for Plaintiff's condition.

## Count I – Breach of Contract

15. All previous allegations are incorporated by reference herein.

16. The health insurance contract between Plaintiff and Defendant provided coverage for Plaintiff's 2-level lumbar disc arthroplasty and the cost of said surgery should have been paid by Defendant according to the terms of the policy. Defendant's denial of coverage constituted a breach of this contract and Plaintiff has incurred damages as set out below.

## Count II – Breach of Implied Covenant of Good Faith

17. The health insurance contract between Plaintiff and Defendant contains an implied covenant of good faith and fair dealing. The conduct required by this implied covenant is honesty in fact.

18. Defendant breached this implied covenant by refusing without justification to provide coverage for Plaintiff's 2-level lumbar disc arthroplasty with the prodisc L.

## Damages

19. Under Montana law, Plaintiff is entitled to obtain consequential damages for the Defendant's breach of contract and for Defendant's breach of the implied consent of good faith and fair dealing. These damages include:

   1) cost of surgery and cost of travel to Germany for the surgery in the amount of ≈ $45,000.00;

2) loss of income from Plaintiff's horse business in the amount of ≈ $50,000.00.

## Pain

20. The denial of coverage by Defendant on 12/15/2022 prevented Plaintiff from having his successful 2-level lumbar disc arthroplasty for approximately ten (10) months. Plaintiff was in severe pain during this ten (10) month period. Montana law allows recovery for this unnecessary pain in an amount to be determined by a jury.

## Punitive Damages

21. 1. Defendant submitted an unsigned anonymous report to make its final denial of coverage for Plaintiff's 2-level lumbar disc arthroplasty.

2. Defendant was aware of the FDA's pre-market approval of the prodisc L medical device for use in 2-level lumbar disc arthroplasty in 2019.

3. Defendant was aware the 2-level lumbar disc arthroplasty had been successfully performed in many countries around the world prior to its denial of coverage for Plaintiff's surgery.

4. Defendant was aware that tens of thousands of 2-level lumbar disc arthroplasty had been performed by surgeons in the United States for many years prior to Defendant's denial of coverage for Plaintiff's surgery.

5. Defendant was aware that many, if not most, major health

insurers in the U.S. provided coverage for 2-level lumbar disc arthroplasty at the time it denied coverage for Plaintiff's surgery.

These facts and others to be obtained through discovery constitute actual malice as that term is defined under Montana law. Defendant acted with actual malice when it denied coverage for Plaintiff's 2-level lumbar disc arthroplasty.

6. By December of 2022, Defendant was aware that there had been several longitudinal studies establishing the safety and effectiveness of 2-level lumbar disc arthroplasty using the prodisc L device. These longitudinal studies were over a span of 7 years.

**Relief Requested**

1. Plaintiff demands trial by jury.
2. For consequential damages in the approximate amount of $95,000.00, the specific amount to be determined at trial.
3. For pain in an amount to be determined by the jury.
4. For punitive damages in an amount to be determined by the jury.
5. For such other relief as the Court deems proper.

DATED this 8th day of April, 2024.

/s/ Torger Oaas
TORGER OAAS
Counsel for Plaintiff