IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| JUSTIN KING,<br><br>Plaintiff,<br><br>v.<br><br>HEALTH CARE SERVICE CORP.,<br>Defendant. | Case No. CV-24-32-GF-BMM<br><br>**ORDER** |

## BACKGROUND

Justin King ("King") filed his original complaint on April 8, 2024. (Doc. 1.) Health Care Services Corporation ("HCSC") filed a motion to dismiss on May 30, 2024. (Doc. 4, 4-1.) The Court granted in part and denied in part HCSC's motion to dismiss on July 15,2024. (Doc. 15.) The Court dismissed an insurance bad faith claim alleged in Count II of King's original complaint, and King's punitive damages claim. (*Id.*) The Court denied HCSC's motion to dismiss a breach of contract claim in Count I. (*Id.*) King filed a first amended complaint on August 6, 2024. (Doc. 23.)

1

HCSC moved to dismiss Count II of the *first amended* complaint on August 27, 2024. (Doc. 26.) King filed a *second amended* complaint on September 3, 2024. (Doc. 29.) The Court denied HCSC's motion to dismiss the first amended complaint as moot. (Doc. 36.) HCSC filed another motion to dismiss Count II of the second amended complaint. (Doc. 39.) Count I remained unchanged from the original pleadings. (Compare: Doc. 1; Doc. 23; Doc. 29.) The Court held a motion hearing on November 4, 2024. (Doc. 48.)

## LEGAL STANDARD

A claim must be dismissed when there is a failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility arises when the complaint pleads facts from which the Court can draw reasonable inferences that would prove the defendant liable. *Id.* (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard asks for more than a sheer possibility that plaintiffs are entitled to relief." *Orellana v. Mayorkas*, 6 F.4th 1034, 1042 (9th Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678)). A court must take allegations of material fact as true and construe the facts in the light most favorable to the nonmoving party. *Turner v. City and County of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015).

"Dismissal is proper only where there is no cognizable legal theory, or an absence of sufficient facts alleged to support a cognizable theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Montana law requires that a party "point to the violation of a specific contractual provision in order for its complaint to sound in contract." *Tin Cup Cty. Water v. Garden City Plumbing & Heating Inc.*, 200 P.3d 60, 67 (Mont. 2008).

Montana's Unfair Trade Practices Act ("UTPA") reserves the right for an insured to bring a breach of contract claim. *Draggin' Y Cattle Co., v. Junkermier*, 439 P.3d 935, 942-943 (Mont. 2019). "An insured may not bring an action for bad faith in connection with the handling of an insurance claim." Mont. Code. Ann. § 33-18-242(3). The Montana Supreme Court allows a claim for breach of covenant of good faith and fair dealing that does not involve the handling of an insurance claim. *Thomas v. Northwestern Nat. Ins. Co.*, 973 P.2d 804, 809 (Mont. 1998). The Montana Supreme Court recognized in *Marshall v. State* that the plaintiff succeeded in pleading a breach of the implied covenant of good faith and fair dealing claim. 830 P.2d 1250, 1251-52 (Mont. 1992). Marshall argued that his employer acted in secret to deny Marshall's job promotion and breached the contract by breaching the implied covenant of good faith and fair dealing. *Id*. The plaintiff in *Thomas* brought a breach of covenant claim based on conduct during renewal of the policy. 973 P.2d

at 809. The Montana Supreme Court determined that Mont. Code Ann. § 33-18-242(3) did not bar the plaintiff's claim. *Id*.

# ANALYSIS

**1. HCSC did not misrepresent King's coverage under King's policy.**

King argues that HCSC misrepresented what was covered under King's medical insurance policy ("policy") by relying on the independent external reviewer's ("IER") decision on the following claims: 1) insufficient long-term evidence exists indicating efficacy of this treatment; 2) The North American Spine Society does not approve the use of this device in more than one level in their latest position statement. Thus, the treatment would be considered investigational, and thus not medically necessary; and 3) insufficient data exists to support efficacy. (Doc. 29 at 6-7.) King alleges that HCSC relied on the IER's decision in determining to deny his claim for benefits. (*Id*.) King makes no allegations, however, that HCSC made misrepresentations related to King's policy. King alleges that HCSC's reliance on an IER was misleading under the terms of the insurance contract.

HCSC correctly points out that courts typically evaluate UPTA claims against the conduct of the insurers and not the IER's assessment. (Doc. 40 at 8; citing *Graf v. Cont'l W. Ins. Co.*, 89 P.3d 22, 27 (Mont. 2004)). King alleges that HCSC wrongly based its decision to deny benefits on the IER's review. King contends that HCSC's decision must come before the IER review as a matter of procedure and the

4

underlying insurance policy. King contends that denial of benefits (specifically medical necessity determinations) by the insurer triggers an IER. The IER is tasked with reviewing records on which HCSC relied. (Doc. 40-1 at 25-28.)

The IER's decision does "not give deference to the initial adverse benefit determination and will be made anew." (*Id*. at 25-26.) HCSC completed the review procedure and notified King of his denial of benefits on November 9, 2022. (Doc. 47 at 6.) King properly appealed, and an independent review officer affirmed the denial of benefits 30 days later. (*Id*.) King alleges no facts that show HCSC made any misrepresentations about King's policy and fails to allege a violation of Mont. Code Ann. § 33-18-201(1).

King's reliance on *Lorang v. Fortis Ins. Co.,* proves unpersuasive. The insurer in *Lorang* stopped providing for a medically necessary procedure for which it had paid for in years prior. *Lorang v. Fortis Ins. Co.,* 192 P.3d 186, 192 (Mont. 2008). The insurer repeatedly denied the insured's claims until the insured was forced to file a lawsuit. *Id.* at 195. The Montana Supreme Court concluded that the insurer misrepresented the policy to the insured when it had previously covered the medical necessary procedures numerous times. The insurer took the additional step of convincing the insured to "upgrade" the policy before it denied coverage again for the same procedure. *Id*. at 211. Nothing required the insured to show that the insurer intentionally had misrepresented the policy by failing to provide coverage and the

insurer could not escape misrepresentation simply by eventually paying the insured. *Id*. at 212.

King applied for benefits for a one-time surgery that HCSC denied at the outset. King did not have an ongoing ailment that HCSC covered previously for which HCSC then stopped providing coverage. HCSC determined that the surgery fell beyond the scope of the covered methods for surgery and made its decision based on the language of King's policy. HCSC did not change its position after previously having approved King's benefits. *Id*. at 211. HCSC consistently determined that the surgery was not covered.

A general commercial liability policy covered a condominium association in *2 Lemoyne Parkway Condo. Ass'n v. Travelers Cas. Ins. Co. of Am.*, No. 23-cv-2130, 2024 U.S. Dist. LEXIS 265, at *3 (N.D. Ill. Jan. 2, 2024). The insured suffered water damages after wind and hailstorm damaged the roof of the condominiums. *Id*. The insurer declined to cover the water damage in the interior of the building because it attributed the water damages to "openings in the roof surface not caused by a covered peril." *Id*. at 2 The district court determined that the insured's complaint had been adequately pled to support a bad faith claim because the insurer failed to explain how it came to its conclusion that the roof was leaking for reasons other than the hail and wind damage. *Id*. The insured went beyond claiming that the insurer acted "vexatiously and unreasonably" and included precise actions the insurer took in

6

delaying investigation of the claim, delaying settlement of the claim, and forcing the insured to file a lawsuit to recover the disputed amount. *Id*. at 5-6.

King fails to plead any actions that HCSC took that delayed investigation, delayed settlement, or forced King to file a suit. King simply takes what HCSC uses as facts to deny his claim and alleges that those facts were misleading, false, and made in bad faith. King does not allege specific instances of misleading conduct in which HCSC engaged.

King further alleges that the Food and Drug Administration's ("FDA") decision to approve King's surgery and the equipment used in his surgery, means that HCSC should have approved King's claim. A potential dispute exists over the scope of Kings coverage that must be resolved through King's breach of contract claim. No dispute exists over HCSC's alleged misrepresentation or false statements about the scope of King's insurance policy. King does not allege facts that HCSC failed to properly investigate his claim or that HCSC delayed settlement of his claim. The Court cannot assume facts that are not plead in sufficient detail.

2. **Whether HCSC's liability to pay for King's surgery was reasonably clear after denying benefits and recommending independent review.**

King alleges that his surgery seeking a 2-level lumbar disc arthroplasty using artificial Prodisk L discs ("Equipment") should have been considered medically necessary rather than experimental. (Doc. 29 at 2-3.) King alleges that because the FDA had approved use of the Equipment for his surgery, it should not be considered

7

experimental, investigational, or unproven as defined under the policy. (*Id.*) HCSC counters that its determination that King's surgery was experimental or investigational and its denial of coverage did not violate Montana law and comports with the terms of the policy. (Doc. 40 at 11-12.)

Mont. Code Ann. § 33-18-201(6) provides that a person may not "neglect to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear." King argues that it is "reasonably clear" that HCSC was liable to pay for the surgery based on the FDA having approved the type of surgery and that "voluminous medical literature" has been published indicating the Equipment proves safe and effective. (Doc. 45 at 4-5.) HCSC cites *Ridley v Guaranty Nat. Ins. Co.,* to explain when it is "reasonably clear" that an insurance company must pay the insured's medical expenses. (Doc. 40 at 12.)

The Montana state district court in *Ridely* had granted declaratory judgment in favor of a person who had been injured by the insured. The Montana Supreme Court determined that an insurer has an obligation to pay medical expenses when liability is reasonably clear, even if payment comes in advance of the treatment. *Ridley v. Guar. Nat'l Ins. Co.*, 951 P.2d 987, 992 (Mont. 1997). The insurer's obligation to pay was reasonably clear when the when the insured driver was found to be 90% at fault. *Id*. at 988.

King alleges no facts or case law that allows the Court to determine that it was reasonably clear that HCSC should pay. King points to the FDA's approval of the type of the surgery that King underwent to argue that it was necessary and reasonably clear that HCSC should be liable for payment. King fails to allege where the policy makes reasonably clear that HCSC should have paid for the surgery and Equipment based on the FDA's approval. HCSC explained its denial as required by the policy and followed the procedure in the policy to recommend the denial to an independent reviewer. King's claim should be dismissed for lack of facts supporting HCSC's responsibility for paying for Kings surgery after he was denied pre-approval, after independent review, and post-surgery.

## ORDER

Accordingly, **IT IS ORDERED** that:

1. Defendant's Rule 12(b)(6) Motion to Dismiss (Doc. 39.) is **GRANTED in part** and **DENIED in part**.

2. In accordance with this Court's earlier ruling (Doc. 15.), Defendant's Rule 12 (b)(6) Motion to Dismiss (Doc. 39.) is **DENIED** as to Count I of Plaintiff's second amended complaint.

3. Defendant's Rule 12(b)(6) Motion to Dismiss (Doc. 39.) is **GRANTED** and Count II of Plaintiff's second amended complaint (Doc. 29.) is **DISMISSED.**

**DATED** this 15th day of November, 2024.

_____
Brian Morris, Chief District Judge
United States District Court